**THE K. V. JUDGE.**

**THE EDWIN CHILTON.**

**DEMPSEY v. MARINE TRANSIT CORPORATION.**

**THE LEACH BROS.**

**THE JACK LEACH.**

**THE BETTY LEACH.**

**LEACH v. MARINE TRANSIT CORPORATION.**

Nos. 95, 96.

Circuit Court of Appeals, Second Circuit.
Jan. 8, 1934.

Macklin, Brown, Lenahan & Speer, of New York City (Horace L. Cheyney, of New York City, of counsel), for claimant-appellant.

Purdy & Purdy, of New York City (John E. Purdy, of New York City, of counsel), for libelants-appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

On September 15, 1928, the tug Mason with four loaded barges, one of which belonged to the libelant Dempsey, and three of which belonged to the libelant Leach, was bound west on the New York State Barge Canal in the vicinity of St. Johnsville Bridge. The tow was made up tandem on two hawsers about 25 to 30 feet in length and was, with its tug, about 520 feet in length. The Chilton, having in tow four barges made up tandem on short hawsers, was also bound west on the canal ahead of the Mason. When the Mason had proceeded about 100 to 150 feet west of the St. Johnsville Bridge and was only a short distance behind the Chilton's tow, she blew one blast to the Chilton. St. Johnsville Bridge is about a mile and a quarter from Lock 16 on the Barge Canal, toward which both tows were headed. A green light on the lock indicated that it was ready for the next west-bound tow. The Mason was

making from about three to four miles per hour, while the Chilton was proceeding at a considerably slower rate.

Regulation 28, promulgated to cover the navigation of the New York State Barge Canal, provides as follows: "Meeting of Floats and Preference in Passing—Subject to the provisions of Rule 6, page 18, 'Pilot Rules' of the Federal Government, edition of June 1, 1923, or as later amended, when any float navigating any canal overhauls another float moving at a slower rate of speed, the float so overhauled shall, when signalled by the overhauling float, permit same to pass, unless within 300 yards of a lock toward which the vessels are progressing in which case the faster vessel shall not attempt to pass * * *." (Pursuant to provisions of section 33 of chapter 13 of the Laws of 1909, known as the Canal Law [Consol. Laws, c. 5], as amended by chapter 867, Laws of 1923, and as amended by chapter 512, Laws of 1927, known as Public Works Law [Consol. Laws, c. 75].)

The Mason evidently sought to take advantage of the foregoing regulation. After she had sounded the one-whistle signal, she pulled up along the starboard side of the Chilton, but the Chilton gave no answering blast that would indicate that she acceded to the signal of the Mason. On the contrary, she pulled over toward the starboard bank of the canal. The Mason, with her tow, then dropped back under the stern of the Chilton's barges, blew two blasts, which were not answered, and came forward upon the port side of the Chilton's barges and was attempting to pass them on that side when the Chilton headed toward the port bank of the canal, crowding the Mason over upon the port shore and causing damage to libelants' barges which grounded on the rocky bottom of the canal along the port bank.

The court below found that according to the weight of the evidence the passing signals of the Mason were not acceded to by the Chilton but were, in each case, answered by alarm signals. It also found that the Chilton pulled over to the port side of the canal with full knowledge that the Mason was attempting to pass on that side and for the purpose of preventing her from doing so; that the Chilton pulled over at a point about 1,500 feet east of the lock; and that it was not at all necessary for safe navigation that the Chilton should proceed to port at the place where she did. It likewise found that while the Mason was attempting to make a passing that was apparently safe, she was guilty of negligence in proceeding as she did without having her signal acceded to by the Chilton. It was further found that there was no reason why the Chilton should not have accepted the signal except a determination not to let the Mason get to the lock first. The trial judge was accordingly of the opinion that both tugs were negligent, but as the Mason had not been brought into the suit and as her negligence would be no defense to the causes of action of the owners of the barges for the negligence of the Chilton, decrees were ordered against the Chilton for the full amount.

Rule VI of the Pilot Rules for inland waters so far as applicable to the present situation provides as follows: "When steam vessels are running in the same direction, and the vessel which is astern shall desire to pass on the right or starboard hand of the vessel ahead, she shall give one short blast of the steam whistle, as a signal of such desire, and if the vessel ahead answers with one blast, she shall put her helm to port; or if she shall desire to pass on the left or port side of the vessel ahead, she shall give two short blasts of the steam whistle as a signal of such desire, and if the vessel ahead answers with two blasts, shall put her helm to starboard; or if the vessel ahead does not think it safe for the vessel astern to attempt to pass at that point, she shall immediately signify the same by giving several short and rapid blasts of the steam whistle, not less than four, and under no circumstances shall the vessel astern attempt to pass the vessel ahead until such time as they have reached a point where it can be safely done, when said vessel ahead shall signify her willingness by blowing the proper signals. The vessel ahead shall in no case attempt to cross the bow or crowd upon the course of the passing vessel."

The Mindenville Retaining Dam crosses the Mohawk below Lock 16. There was evidence that tows when approaching the part of the canal that is near the dam ordinarily keep to the starboard in order to avoid the current from the river which may tend to swing them too far to port. Likewise when they get into the eddy near the foot of the dam which sets toward starboard it is their custom to swing to port in order not to be carried too far to starboard to make a proper entry into the lock. It is argued that this was just what the Chilton was doing and that the Mason was really doing the same thing. The difficulty with this argument is that according to the finding of the court, which was warranted by ample testimony, the maneuvers of the tugs to starboard and then to port

were initiated long before they were near the Mindenville Dam or the lock, and the navigation of each seems to have been prompted by a desire to get its tow through the lock first, rather than by any necessities of the situation.

Regulation 28 on its face is made subject to the provisions of Rule VI of the Pilot Rules, and it must of course be subject to the power of Congress to regulate interstate commerce. Assuming that the Chilton had the right of way, that she never acceded to the passing signals, and that because of Rule VI she was not obliged to do so, nevertheless the time came when it must have been evident to the Chilton that she would crowd the tow of the Mason on the rocks if she proceeded to port and would not do this if she kept her former course. In such a situation she was the last one who had a chance to avert a disaster and was at fault for insisting upon her privilege.

As was said in The Industry (C. C. A.) 29 F.(2d) 29, at page 30, the case is analogous to one of vessels on crossing courses where the holding-on vessel is ordinarily bound to keep her course and speed. In crossing cases if it becomes entirely apparent that the giving-way vessel can no longer keep out of the way unaided, the holding-on vessel may become bound to change her course or speed. So here, when the Chilton found that the tow of the Mason was passing along the port side of her barges, she lost the right unless compelled by some reason of prudence or necessity to change her course to port and thereby to pocket the Mason and her tow and crowd her barges upon the rocks.

Upon the record in this case we think the finding of the trial judge that the Chilton was negligent was correct even though the latter was an overtaken vessel.

The trial court found upon sufficient evidence that according to usual practice it was necessary for the Chilton to come up alongside of a wall that extended about 250 feet east of the lock in order to get its tow through the lock and to steer toward that wall when about 50 to 75 feet east of it. The Chilton nevertheless began to steer toward this wall which was on the port side of the river when about 1,500 feet east of the lock. At that time the head barge of the Mason's tow was abreast of the second barge in the tow of the Chilton. It was perfectly certain that if the Chilton went to port under these conditions she would crowd the Mason's barges belonging to libelants into the bank on the port

shore. The Mason may have had no justification for being where she was and trying to beat the Chilton in a race for the lock when the Chilton had not given her consent. But, as matters stood, the barges in the Mason's tow were helpless if the Chilton cut across the course of the Mason in the narrow canal. There was none too much room to pass even if the Chilton did her best to keep out of the way. If, instead of doing this or keeping her course, she cut across the Mason's path, disaster was certain. No exigency or even convenience called for such a maneuver and the exercise of reasonable care demanded that the Chilton and her tow keep out of the way. The Chilton's fault is clear and she was properly held liable.

The appellant contends that the Chilton was very near the lock wall when she ported and that porting was necessary at that time in order that she might steer up to the wall preparatory to entering the lock. But there was plenty of testimony to support the finding of the trial court that the Chilton went to port when far from the lock wall and about 1,500 feet below the lock. We should not decline to follow such a finding when made by an experienced trier of facts upon conflicting evidence.

The decrees are accordingly affirmed.